Our case this morning is Warner v. Mylan. Mr. Schatzer. Good morning. May it please the court. The preliminary injunction in this case should be vacated because the district court failed to comply with Rule 52A.2 because it did not find the facts especially or state its conclusions of law separately. What's the schedule for the trial in this matter? Is that still in December or January? There's no trial date. It hasn't been set? It has not been set, Your Honor. But he said that he's ready to go in December or January, right? He indicated, depending on how long the trial that he was going to be conducting in October and November went, that he may be ready for trial in December or January. And that trial's over, correct? I believe that trial, the jury is deliberating at the moment. It means it's almost over. Yes. Okay. Thank you. The district court neither made factual determinations that it needed to make to resolve the issues nor once it determined that there were disputed facts. It didn't hold an evidentiary hearing as required by controlling authority. What do you think was needed to be found that was not found? We have a transcript. I think we've probably all read parts of it where he makes some pretty clear indications as to what his feelings are on the likelihood of success. We're not talking about actual success but likelihood. What findings would you have had him make more? Well, there's at least three issues the court didn't address at all. Invalidity, the functional element of the stabilizing code limitation, and public interest. There are no findings, no discussion on any of those three issues in the court's opinion. Those were all required and the fact the court failed to address them in our view was dispositive in and of itself. When you get to infringement, irreparable harm, where the court did make some statements about its feelings on the likelihood of success, the analysis was superficial at best. The court repeatedly stated that it was not in a position to make final determinations because the facts were disputed at A16. In many of these we'll have to deal with the same issue and that is, did you object and give him a chance to correct any, cure any unfinding of facts such as on the validity? Did you object and say, please give us findings? After the decision was made, we did not. And there was a long discussion at the end, though it was a little confusing, about what more do you want from me? I mean, he kept saying, what more can I do? What more can I give you? What more can I consider? And ultimately, there was no specific request for findings of fact. We were discussing at that point and requested an evidentiary hearing because the court repeatedly stated that they really needed to see the experts testify. He was uncomfortable making credibility determinations just based on the paper in front of him. So when he was asking what more we wanted, we said we'd like an evidentiary hearing. If you're concerned, Judge, if what's holding you back from finding the facts here is seeing the experts, let's get the experts in here. Let's put them on the stand. He said more than once he wanted to see cross-examination. Let's have them cross-examined and let's get findings of fact. Let's let you make these credibility determinations on the experts and then we can get a ruling. And that's what we were requesting, and the judge indicated he didn't have time to hold an evidentiary hearing. Why can't we do that a month from now? Because the injunction's already been in place for two months. Why can't we do it in a month? Because then there's a trial, and then the judge has to make a decision after he hears all the evidence, and we don't know when that decision will be. And the injunction will be in place for that entire time, and we don't know how long that time's going to be. It's been in place for 30 how many months? Two months. Plus 30? Since the end of September. Plus 30, right? We've gone to 30 months. Yes, there was a 30-month stay, and that expired the end of September. So we've been going this way for three years, and suddenly two months really makes a difference. Well, it does, because the statute says they get 30 months. So by granting an injunction that extends it beyond 30 months, you've changed the status quo. The status quo was Milam was going to be able to launch when the 30-month stay expired, because that's all the statute says they're entitled to. So we're not preserving the status quo here. We're changing the status quo. We're allowing them to have more than 30 months, and to get that, they have to meet a burden. The judge has to make findings, and they have to show that they're entitled to the injunction. He has to make a finding on likelihood. He heard you, and he made a decision on likelihood, and you're asking us to say this was an abuse of discretion? Well, on 52A2, it's de novo whether the findings were adequate or not, not an abuse of discretion standard. What's the standard on whether you objected or not? Well, we certainly—I haven't seen any case law that says that to preserve 52A, you have to make an objection or waive it. The judge has a duty to comply with it whether we object or not object. That's a duty that rules put on the court. I think it's correct that you don't have to object to the failure to make findings, but the question is whether here the findings that he did make are adequate, and whether they related to areas where the disputed issues affect, sort of like the summary judgment standard. So if we were to conclude, for example, on invalidity, anticipation, and obviousness that the showing that you made wasn't sufficient to raise a genuine issue, even though the judge believed the factual demonstration that you made, then he wouldn't have to make findings about it. The real question that strikes me is whether some of these findings on infringement, which were very conclusory, are adequate under Third Circuit law. And, for example, in explaining why he found the Davies test to be sufficient, he really didn't say very much at all about whether that was consistent with industry standards and industry practice. That's right, Your Honor. And on the first point, I do think that any issue that's raised by a party as a defense of the injunction, the court has an obligation to address that issue. And it's not like a summary judgment standard where the court can say, well, there are disputed facts, and so we'll just have a trial. I think the case law is very clear that you have to find the facts. Now, because it's preliminary, if the judge wants to hold a trial, he can do that. What about educational testing services, the Third Circuit case that says you do have to object in certain circumstances? There are some cases that say that. There are other cases that hold that you don't need to object. And the more recent cases that we've looked at, there was no indication that a party objected or that the court held them to a standard of having to object to the findings. And I would say that our request for a hearing, an evidentiary hearing, when the judge told us he couldn't find the facts, was an objection to the judge's method of conducting the hearing. He said, I can't find these facts. I need to see the experts. I need to see them cross-examined. And we said, Your Honor, let's do that. Let's have a hearing. Well, I mean, I'm sure that your opponent will argue that what he said was, in the best of all worlds, I would understand more if I heard cross-examination. But that doesn't mean that he didn't actually make findings. And there is a case law that says that because it's preliminary, that the rules of evidence do not strictly apply. And then he's got adequate declarations and affidavits. There can be findings, in fact, that are made based on that kind of a record. Well, controlling Third Circuit authority, Sims v. Green says when you… You didn't cite a Third Circuit case on this question. In our brief, we didn't cite a Third Circuit case on this. And yet you're now saying there's – maybe you better give it to us out of your head, since you didn't give us any evidence to look at in advance. Sims v. Green is the controlling case, 161 App. 2nd. 87. It's the Third Circuit. And it says when there are disputed facts… Well, it's Sims v. Green. Green. And why didn't you cite this? Your Honor, we cited some other circuits as we prepared for this argument. We found some Third Circuit cases that supported it. We did cite a D.C. Circuit case. But you didn't cite any in the briefs to this court, right? We didn't cite a Third Circuit case on this point. We cited other circuits. Which is kind of important, isn't it? It is, and we realize that, and that's why I'm prepared to cite today. What is Sims v. Green is? 161 App. 2nd. 87. And that case says that when you are hearing a preliminary injunction and there's a dispute as to the facts, the court needs to hold a hearing and shouldn't rule simply on the papers. And that's what we requested once the judge made it clear. And Judge O'Malley, to your comment, at the very end of the hearing the judge said, I have submissions galore and it's really gotten down now to going through them. Without seeing these different experts, you know, it's really very difficult to make final determinations, and I'm telling you that. That's at the end of the hearing. How long a trial do you anticipate in this case? It depends on whether the case is tried with Milan alone or with the other defendants that are consolidated with this case for discovery purposes. If it's Milan alone, I would say the trial would take somewhere between 5 and 7 days. If it's with all the defendants, it's probably going to take at least twice that long. So what the judge was facing is essentially doing this twice, a 2 to 3 day preliminary injunction hearing and then a 5 day trial, but essentially considering the same issue. The issues would have been very similar, but the injunction was imminent because the issue was imminent because Milan's 30 month stay was expiring. But Milan doesn't even have approval. Milan's understanding from the FDA is the only impediment to approval is the existence of this injunction. That's not normally the way the FDA works. The district judge did not make findings extending the 30 month stay. The FDA doesn't stop just because there's an injunction in place. All I can say is that my understanding from Milan is that their understanding from the FDA is that this injunction is the impediment to their approval. But there's not even preliminary approval, is there? There is preliminary approval. There is? Yes. Okay. So Milan was expecting, up until this injunction was issued, to get approved on the 30th of September. By the way, on our procedural point, your Sims case is from 1947. We have more recent cases of Elliott v. Kieswetter and professional plan examiners that say you better be objecting. Those are 84 and 96 cases. And there are even some more recent cases, Your Honor, and I apologize for not having the cites with me, where that issue wasn't discussed at all as to the need to make an objection. I think it was around the 96 and the 84 case. Are you going to cite me the 47 one? Your Honor, we did object. We asked for a hearing. We said, Judge, you need to find the facts. And if you need to hold a hearing to find the facts, then let's have a hearing. We believe that's an objection. Reserve your rebuttal time. Yes, Your Honor. Thank you. Tondi. May it please the Court. The key issues on appeal are whether the District Court's findings of fact on infringement and harm were clearly erroneous. Well, there's a question as to whether he should have had an evidentiary hearing. In the Sims case and the Elliott case in the Third Circuit, say that in connection with the preliminary injunction, if the disputed issue is a fact, he must have an evidentiary hearing, correct? Your Honor, like has been said, those cases were not cited in Milan's brief. I haven't reviewed those cases, but I'm willing to accept that that's the standard. It is along those lines. I think that… Elliott says the District Court cannot issue a preliminary injunction that depends upon the resolution of disputed issues of fact unless the Court first holds an evidentiary hearing. So let's just accept that. Didn't Elliott go on to say in refusing to hold an evidentiary hearing, the District Court impliedly resolved the factual issues against the party that didn't object? Right. So I think what happened here, in my view, Your Honor, is, first of all, Milan had every opportunity to ask for an evidentiary hearing, and they never asked it. Didn't they ask for an evidentiary hearing? They only asked it after they learned from the District Court they were going to lose. The time that they asked for the hearing was after the District Court said, I'm going to grant the P.I., and then Milan says, well, now we need an evidentiary hearing. But this whole hearing was, what, 40 minutes or so? It was about an hour. And it wasn't clear at the outset whether he was going to consider it as a request for a T.R.O. or a preliminary injunction, right? Well, I think at the outset there was some confusion on that point, Your Honor, because we asked for a contingent T.R.O., and the reason we asked for that was because the 30-month stay was coming up, and if for some reason he needed more time to decide our preliminary injunction, we wanted to have a mechanism in place that would allow him to enter a T.R.O. for a week or so and then decide the preliminary injunction. In fact, that's pretty much what you contemplated he would probably do, given the way these procedures normally work, right? Right, Your Honor. And he could have done that for up to 20 days without holidays. I mean, he could have had almost a month to consider the P.I. He could have considered it more, but in these cases, as we all know, these are not like other patent cases in this very important respect. Most of the time a P.I. is filed at the beginning of the case. No fact evidence, no expert disclosures. In ANDA cases, the P.I.s come two and a half years into the case, and at that point the party's evidence is sort of crystallized. We know which each side's positions are. The preliminary injunction motion was, in effect, a preview of the trial. The trial is going to be set, according to Judge Martini, in January. Well, fine, but there was still a conflict in the evidence, right, particularly as to the validity of different kinds of test methods and whether they would show something. There was a conflict in the evidence, right? Well, actually, with regard to Dr. Davies' testing, I don't believe there was as much of a conflict on Dr. Davies' testing as Meiling tries to make out, and if I may, I can explain why. Really? I mean, I've read the expert reports, and he says my methodology is good. The other experts say it's not. Well, interestingly, they say it's not, but when we get to the science of that testing, there's really not a dispute. This all has to do with the humidity testing, and Dr. Davies did the humidity testing to show the layer of povidone underneath the enteric coating more clearly, and before he did that testing, he ran a control experiment where he took povidone and the other ingredients in Meiling's tablet, and he exposed it to five seconds and said, yes, when I expose it to high humidity for five seconds, the povidone ingredient changes color. Meiling's experts don't dispute that experiment at all. But what they do dispute is whether that's a good test for determining the presence of povidone, and you have Elder and Buckton suggesting that that's not an acceptable test method, and Davies, of course, says it is, so there's a conflict in testimony about that. Well, what Dr. Elder actually said is that he agreed with Dr. Davies that a five-second humidity testing would show a difference. No, no, I'm talking about whether this humidity testing can be used to determine the chemical composition. Buckton says at 2025 that that is not the right test for determining chemical composition. These other tests which Meiling presented were the right way to do it. There's a conflict as to whether this is the right kind of test to do. Well, certainly Meiling is asserting that that's not the right test, but I'm suggesting that if you go below that conclusory argument and look at exactly what Dr. Davies does, Meiling's experts don't really dispute the science of Dr. Davies' testing. Dr. Elder, in fact, said yes, the dark patches that he saw were a concentration of povidone, as would be expected, because povidone is more hypersaturated. Elder goes on to say a five-second test isn't good enough, and you have to go on and have a longer test, so that's another conflict in testimony, right? Dr. Elder's testing of putting it down for five minutes defeats the purpose of Dr. Davies' testing in the first place, which is to show the relative difference between the ingredients. So if one ingredient is really hygroscopic, it'll change color quickly. If you leave it for five minutes, the whole tablet's eventually going to get absorbed moisture. So that's sort of the fact that after five minutes, he's got a different display of his image. It's not all that unexpected, given the length of time. That's why Dr. Davies did it for five seconds. Good arguments for finding the facts your way. The problem is that we're not here to find the facts. That's what the district court is supposed to do. Right, and the district court considered all those facts in those declarations, and like I said before, those declarations reflect the trial testimony. We're way beyond the initial stages of the case, so the district court effectively previewed what the evidence is going to be and said that plainness has showed a likelihood of success, and he left open the possibility that at trial, on cross-examination, that maybe he could change his mind. That's exactly what this court has instructed district courts to do, to keep an open mind that later, when you go to a full trial, that perhaps your views will change on the issues. The judge said that he was ready to tee this case up for trial in December, but you're saying that you still think it's going to be January, not December? Yeah, I think he said December or January, and I think we're essentially mostly done with expert discovery at this point, and I think as a practical matter, given all the pretrial work that has to get done, that it's much more likely to be January than December, Your Honor. But the judge would have had the option to combine the P.I. with the merits and just say you're going to trial whether you're ready or not, right? He could have taken that option. I think that he decided not to, that he thought he saw enough evidence through the declarations to get a firm handle on the issue of infringement, and he agreed with our experts' testing, and quite frankly, he also looked at Mylan's testing. Mylan's testing, he looked at all the images and the declarations, and it's very clear that the key evidence they rely on, both Dr. Elders and Dr. Everalls, are out of focus and thus not reliable. And so it wasn't like the district court didn't review all the evidence. He clearly had reviewed all the evidence. He asked very pertinent questions during the hearing, and he actually asked Mylan to tell him why he was wrong.  But most of that was Mylan trying to convince the judge why he was wrong on infringement and also trying to convince the judge why he was wrong on harm. And during that argument, Mylan, at the end, and I think you mentioned this earlier, Your Honor, about there was a little confusion at the end. What he really was saying there is that if you have other evidence, and this is at 58 and 59 in the record, if you have other evidence, bring it to me and I'll look at the injunction again. Mylan didn't say at that point, oh, you need to look at this invalidity argument, or you really need to look at this migration argument, or by the way, the public interest, you really didn't deal with that. Mylan never said anything about that. The district court was open to hearing that, but Mylan didn't act. And what additional did they put in their evidence? The question is which experts do you believe? Well, I think in large measure it goes to what experts do you believe, and a judge looked at this as a fact finder and said, I see plaintiff's witness's expert's evidence, and I see defendant's. Plaintiff's evidence makes sense to me. The defendant's expert evidence does not, because I see these flaws. I can see it with my own eyes. I can see these images that are clearly out of focus. When was the Markman hearing? The Markman hearing was in July. And how long was it? The hearing was about an hour, hour and a half. Was there expert testimony? There was not expert testimony, Your Honor. I also would like to raise on the issue of harm. Again, it's a question of whether the findings of fact were clearly erroneous. Now, Mylan has said to the district court and to this court that they anticipate having final FDA approval by the end of September. We're now two months later. We still haven't seen final approval from the FDA. We haven't seen any evidence that the FDA is not granting final approval because of the injunction. Mylan has given us no documents where the FDA said that. I agree with Your Honor that it's very unusual for the FDA to act in that way. I've been involved with cases where there were injunctions in place or essentially injunctions. And as long as it didn't affect that the FDA thought they had the ability to act, they would act. And the 30-month stay has expired. There's no legal reason why the FDA cannot grant final approval. Now, because of the injunction, Mylan may not be able to launch. But there's no evidence on the record anywhere, even outside of this context, that Mylan, the reason the FDA hasn't granted final approval is because of this injunction. And quite frankly, that's not typically how the FDA works in my experience. So what are you suggesting? That if the injunction were removed, they still wouldn't be able to go forward? Yes, Your Honor. That there's been no harm to Mylan. They couldn't sell their product anyhow. And even if the injunction was removed, there's no evidence that they would get approval. Now, they would get approval eventually probably. They have tentative approval. And potentially they would get approval soon, like in a month or so. I don't know. They need to get approval and you wouldn't be harmed either, right? Correct. But the problem is that we don't have control over the FDA when they grant approval. So keeping the injunction in place is very important on the offhand that they actually get approval before we go to trial. So we can maintain the status quo. We don't know what's going on at the FDA. From our point of view, it's basically a black box. And that's really between Mylan and the FDA. And frankly, I'm not even sure that Mylan knows exactly what the FDA is doing. I mean, the FDA has their own regulations that they have to abide to. So keeping the injunction in place is really critical at this point. But on the flip side, there's been no harm to Mylan. There's been no harm in the last two months. And there may very well be no harm to Mylan even as we go to trial, depending on what happens at the FDA. Unless you have any other questions, I will close. Thank you. Thank you, Your Honor. I have around four minutes. Thank you, Your Honor. Just a few points. With respect to the trial date, expert discovery was supposed to be done yesterday. It wasn't. The plaintiffs had some issues. And it's not completed yet. So whether there's a trial even in January, I think, is an open question. And when the judge ultimately decides after the trial is still an open question. So the injunction is going to continue for the foreseeable future. We have no clarity on when the injunction might be lifted. If there's a trial and the court finds that it shouldn't have issued the injunction in the first place. On disputed facts. Well, damages have been bifurcated, right? Correct. So what's going to go to trial beyond the critical infringement question? Invalidity. The invalidity? Yes. So essentially the judge could have a trial on infringement, a mini-trial on infringement as it relates to the PI? I anticipate the judge is going to have a trial on infringement and invalidity. And like I said, the question also about scheduling two other defendants in joined cases for discovery purposes. And it's not clear to us whether the judge intends us to try our case separate from them or not. We would certainly prefer that so it happens more quickly. But we have no insight on that. And the court hasn't given us any insight on that. That's a much longer trial with several more experts and a lot more lawyers. And it's going to take a lot longer than five to seven days. At least twice as long. And that's also an open question. Do the other defendants have a different product? It's the same product. The infringement theories differ as to each of the different defendants. So there's not an overlap. Is the construction of the beads the same in these other products or is it different? It's different. They're made differently in each case. As far as there being disputed facts. Is that what's really at stake here? You want a separate trial from the other co-defendants? That would certainly help if this injunction is going to stay in place. Obviously we'd prefer that there be no injunction. But if the injunction is going to stay in place, then certainly we need a quicker trial. And if we're separated from the other defendants, that's certainly one way for that to happen. On the disputed facts, we don't have to debate whether the facts are disputed. The court told us on at least three occasions that it couldn't find the facts. On A16, the court said, because I am not in a position to say which of the experts are more credible and less credible, and it's going to come down to the experts, and reading it is one thing, hearing their testimony subject to cross-examination is another thing. The court tells us the facts were disputed. So we shouldn't have to debate that. The court tells us that it couldn't find the facts unless it heard the experts. Well, at least with respect to irreparable harm, the court was pretty specific about finding facts. Well, not really. There's three sentences. All the court did was list the harms that the appellees claimed, and the judge said that if they incur those harms, they'll be irreparable. There's no analysis. There's no discussion. Why are they irreparable? What about the countervailing evidence on those points? Yeah, but the irreparable harm question is a lot simpler than the infringement question. I mean, why does he have to make more elaborate findings on the irreparable harm than he did? He has to make some sort of finding other than simply listing the harms. That's all that's in those three sentences is a listing of the harms in an appellee's brief. There's no analysis at all about it. They've laid them out in detail, he says. So those are all the damages, and if they sustain irreparable, they would sustain irreparable if there was a launch. Well, and the judge is even equivocal there. He sets it up saying they've given me in detail, and I find it irreparable. What more does he have to say? Well, he says if they incur them. He doesn't even say it's likely. He says if it will, this may happen. But we can't assume that the only consideration the judge gave was in these few pages. I mean, you all submitted a lot of material to the district judge, and he said I've read it all. Well, he said it, and then later he said he kind of backed off of that. He said I have submissions galore, and it's really gotten down now to going through them. So there's some question about how much of it the court actually read. The court sort of conceded it hadn't gone through everything yet. Back to your if point, this is a preliminary injunction. It's likelihood. It has to be an if, doesn't it? What you want is you want a trial ahead of the other co-defendants, and you hope to get it through this preliminary injunction proceeding. But isn't it the district court's call when you get your trial and how? No, we want to be able to launch our product when the statute tells us we're able to launch our product, regardless of when the trial is. That's what this is about. What took so long to get your discovery done? Your Honor, I'm not sure, to be perfectly honest. I got involved in this case in April, but it's not clear to me why it's taken so long. It's not clear to me why the expert discovery wasn't completed yesterday. I think Mr. Connie might be able to answer that question. It's hard for a trial court to set a trial within the 30 months if the parties haven't done what they have to do to get ready for trial. Well, and part of it was the court took a while to decide some issues as well. The parties had to ask the court for a Markman hearing because the Markman brief sat around for over a year, and finally the parties together asked the court for a Markman hearing. So that was part of the scheduling issue as well. Just to conclude, Milan would ask the court to vacate the injunction, and if the court could do that in a non-published opinion as quickly as possible so that Milan can launch its product and the harm to Milan and the public can be ameliorated. But you can't launch your product because FDA hasn't let you, right? If our understanding is correct that the injunction is the impediment, then this court's vacating that injunction. But the understandings you shouldn't even mention. They're not on the record. What we need is some record evidence which you haven't provided on that. That's the relief that Milan requests. Thank you very much, Your Honor. Thank you.  The Honorable Court has adjourned for the day.